UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MATTHEW A. BEERS,

        Plaintiff,               **DECISION AND ORDER**

    v.

                                    6:19-CV-06148 EAW

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

# INTRODUCTION

Represented by counsel, Plaintiff Matthew A. Beers ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted, the Commissioner's motion (Dkt. 9) is denied, and matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed his application for DIB on March 15, 2016. (Dkt. 7 at 18, 59).[1] In his application, Plaintiff alleged disability beginning April 29, 2015, due to degenerated discs and herniated discs. (*Id.* at 18, 61). Plaintiff's application was initially denied on July 8, 2016. (*Id.* at 18, 73-82). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Jennifer Gale Smith in Syracuse, New York, on April 10, 2018. (*Id.* at 18, 31-58). On May 25, 2018, the ALJ issued an unfavorable decision. (*Id.* at 15-25). Plaintiff requested Appeals Council review; his request was denied on December 28, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-7). This action followed.

## LEGAL STANDARD

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

### I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on September 30, 2017. (Dkt. 7 at 20). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since April 29, 2015, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative disc disease (DDD) at L4-S1 levels with end-plate degenerative changes; and obesity." (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 21). The ALJ particularly considered the criteria of Listing 1.04 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform less than sedentary work as defined in 20 C.F.R. § 404.1567(a), with the additional limitations that Plaintiff can:

> lift/carry 10 pounds occasionally and less than 10 pounds frequently; sit 6 hours in a routine 8-hour workday; and stand/walk 2 hours total in such a workday; but should not climb ladders, ropes and scaffolds, balance, kneel, crouch, or crawl; can occasionally climb ramps and stairs and stoop; should not work at unprotected heights, climbing ladders, ropes and scaffolds, or work in close proximity to dangerous machinery or moving mechanical parts of equipment. In addition, [Plaintiff] should have no more than occasional exposure to respiratory irritants such as dust, odors, fumes and gases, or to extreme hot and cold temperatures; and should not be exposed to vibrations. [Plaintiff] should change positions every half hour but can stay on-task at the work station during the position change.

(*Id.* at 21). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 23).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of addresser, document preparer, and

order clerk, food and beverage. (*Id.* at 24-25). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 25).

## II.     **Remand of this Matter for Further Proceedings is Necessary**

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing: (1) the RFC is not supported by substantial evidence; (2) the ALJ failed to explain her finding at step three of the sequential analysis that Plaintiff's impairment of degenerative disc disease did not meet the requirements of Listing 1.04; and (3) the ALJ erred in assessing Plaintiff's credibility. For the reasons set forth below, the Court finds that the ALJ did not explain her finding at step three of the sequential analysis that Plaintiff's degenerative disc disease did not meet the requirements of Listing 1.04A, and that this error necessitates remand for further administrative proceedings.

### A.     **The ALJ's Step Three Finding**

"Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009), *adopted*, 614 F. Supp. 2d 252 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 U.S. Dist. LEXIS 61642, at *7 (W.D.N.Y. Apr. 24, 2017) (internal quotation and citation omitted). "If a claimant's impairment manifests only some of those criteria, no matter how severely, such impairment

does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (internal quotations and citations omitted).

An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Rockwood*, 614 F. Supp. 2d at 273 (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)) (alteration in original). "[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Loescher*, 2017 U.S. Dist. LEXIS 61642, at *7 (internal quotations and citations omitted) (second alteration in original). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

At the administrative hearing, Plaintiff argued that his degenerative disc disease met the requirements of Listing 1.04A, for disorders of the spine. (Dkt. 7 at 34). He identified specific evidence supporting his argument, including a recent MRI showing that Plaintiff had a "herniated disc or the spinal stenosis or the facet arthritis with comprising the nerve

root." (*Id*. at 34-35). The ALJ stated that she would "send it off to a medical expert to see if [Plaintiff] does meet Listing 1[.]04." (*Id*. at 35).

The ALJ found at step two of the sequential analysis that Plaintiff had severe impairments, including degenerative disc disease. (*Id*. at 20). In making this finding, the ALJ referenced Plaintiff's July 2016 consultative examination by Gilbert Jenouri, M.D., who noted that Plaintiff's pain "radiates to the bilateral lower extremities with numbness and tinging on occasion, and is precipitated with activity." (*Id*.). The ALJ also discussed Dr. Jenouri's physical examination of Plaintiff, including Dr. Jenouri's finding that Plaintiff had full range of motion in his cervical spine but limited range of motion in his lumbar spine, positive straight-leg raise tests, and tenderness. (*See id*. at 21 (discussing Dr. Jenouri's finding that Plaintiff had "lumbosacral spine extension/flexion 25 degrees, lateral flexion left 20, right 20, rotation right 20, left 20. [Straight-leg raise] right was 25 degrees, left 25 degrees positive, both confirmed seated. There was bilateral sciatic notch tenderness to palpation.")). Dr. Jenouri also found that Plaintiff had "[d]ecreased sensation of fine touch on [the] right lower extremity. . . ." (*Id*.).

At step three, the ALJ stated that she "carefully considered" the clinical requirements of Listing 1.04, governing spinal disorders. (*Id*.). In support of her conclusion that Plaintiff did not meet the requirements of Listing 1.04, the ALJ explained that "medical expert Dorothy Leong opined that the claimant's impairments did not meet or equal a listing (Exhibit 18F page 11)." (*Id*.).

The questionnaire completed by Dorothy Leong, M.D., is part of the record before the Court, and consists primarily of check-the-box questions and answers. (*Id*. at 402-15).

On page 11 of the questionnaire, at question number seven, Dr. Leong checked "no," in response to the question "[d]o any of the claimant's impairments established by the medical evidence, combined or separately, meet or equal any impairment described in the Listing of Impairments?" (*Id.* at 412). Dr. Leong did not provide an explanation in the space provided below question seven, which prompted her to "explain[] the specific listings(s) considered and why the listing(s) is not met." (*Id.*). However, Dr. Leong did attach notes to the questionnaire, relating to her review of Plaintiff's condition and her opinion of his functional limitations. (*Id.* at 414-15). For example, Dr. Leong's notes reference a May 7, 2015 MRI showing "[n]o definite nerve root impingement," and no compression fracture. (*Id.* at 414). Dr. Leong also noted an October 23, 2015 examination which showed "diffuse tenderness of the entire lumbar spine," a May 5, 2016 examination which showed positive straight-leg raise tests bilaterally, and an October 12, 2016 examination revealing that Plaintiff's "entire spine remains diffusely tender," with "[h]ypersensitivity to [the] lower thoracic region." (*Id.*). Dr. Leong further noted Dr. Jenouri's July 5, 2016 consultative examination, including Dr. Jenouri's diagnosis of low back pain and bilateral lower extremity paresthesia. (*Id.*). Dr. Leong identified a May 16, 2016 MRI – the same MRI referenced by Plaintiff at the hearing – which showed "mild disc desiccation, disc bulge and small bilateral facet effusion, facet abutting the right and left L4 root in the lateral recess and to the right and left L5 roots sitting in the canal similar to before at L4/5. L5/S1 with disc desiccation, disc bulge, disc protrusion seen centrally to the prior study has decreased. This extends to the right and left neuroforamina and there is moderate bilateral foraminal stenosis." (*Id.*). Dr. Leong also noted medical records from 2017 and 2018,

which confirmed that Plaintiff continued experiencing spinal tenderness and was unable to complete certain medical tests due to increased pain. (*Id*. at 414-15).

"Listing 1.04(A) requires – in addition to a spinal disorder such as a herniated disc, arthritis, degenerative disc disease, or a vertebral fracture –

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

*Scully v. Berryhill*, 282 F. Supp. 3d 628, 635 (S.D.N.Y. 2017) (citing Listing 1.04(A)).

The Court has reviewed the medical record and the written determination, and finds that the ALJ erred by failing to provide a more thorough explanation as to why Plaintiff's degenerative disc disease did not meet the requirements of Listing 1.04A. The aforementioned evidence in the record, including Plaintiff's diagnoses, reduced range of motion, sensory loss, positive straight-leg raise tests, and the results of the May 2016 MRI, appear to match the requirements described in Listing 1.04A. Due to the lack of explanation, the Court is unable to meaningfully review the ALJ's determination at step three of the sequential analysis. *See Rowe v. Berryhill*, No. 1:17-cv-00208-MAT, 2018 WL 4233702, at *3 (W.D.N.Y. Sept. 6, 2018) ("The ALJ's failure to discuss any of this evidence at step three of the sequential evaluation was erroneous. This Court is therefore unable to perform a meaningful review of the ALJ's conclusion that Plaintiff did not meet the requirements of Listing 1.04(A).").

Defendant contends that the ALJ relied on the conclusion of Dr. Leong to support her step three determination. (*See* Dkt. 9-1 at 23). However, a close review of the

questionnaire completed by Dr. Leong reveals that she, like the ALJ, failed to explain her conclusion that Plaintiff's degenerative disc disease does not meet the requirements of Listing 1.04A. Although the questionnaire completed by Dr. Leong instructed her to "provide rationale . . . explaining the specific listing(s) considered and why the listing(s) is not met" (*see* Dkt. 7 at 412), Dr. Leong failed to provide a rationale. As mentioned above, Dr. Leong attached notes to her questionnaire, which summarize her review of Plaintiff's medical records and provide an assessment of his functional limitations (*see id.* at 414-15); however, the notes also lack a clear explanation as to why Plaintiff's degenerative disc disease did not meet the requirements of Listing 1.04A. Accordingly, the ALJ's failure to provide an explanation for her step three finding is not cured by her reliance on Dr. Leong's questionnaire.

The ALJ's failure to provide a more detailed explanation at step three of the sequential analysis is problematic, particularly because Plaintiff's diagnoses and his symptoms appear to match those described in Listing 1.04A. *See Ryan v. Astrue*, 5 F. Supp. 3d 493, 509 (S.D.N.Y. 2014) ("Because there is evidence that plaintiff's impairments meet each of the requirements for listing 1.04A, the ALJ must provide an explanation of his reasoning as to why he believes the requirements are not met and explain the credibility determinations and inferences he drew in reaching that conclusion."). For example, the ALJ found that Plaintiff had a spinal disorder (degenerative disc disease), as required by Listing 1.04A. Further, both the ALJ and Dr. Leong acknowledged that Plaintiff's medical records reveal that he experienced widespread pain, reduced range of motion, sensory loss in his right lower extremity, and positive straight-leg raise tests. These findings are also

relevant to the requirements of Listing 1.04A. In addition, Plaintiff's medical records indicate that he experienced these symptoms on a continuing basis, from 2015 through 2018. The ALJ does not specifically dispute any of the above-mentioned information relating to Plaintiff's condition.

Finally, as raised by Plaintiff at his administrative hearing, his most recent MRI in May 2016 arguably revealed evidence of nerve root compression. *See Davis v. Astrue*, No. 6:09-CV-186(LEK/GHL), 2010 WL 2545961, at *4 (N.D.N.Y. June 3, 2010) (observing that the plaintiff met the first requirement of Listing 1.04A, *i.e.*, "evidence of nerve root compression," where an MRI of the plaintiff's lumbar spine revealed a disc herniation, which came in close proximity to the descending nerve roots, and "may abut their nerve root sheaths."), *adopted*, 2010 WL 2545694 (N.D.N.Y. June 21, 2010). While Dr. Leong's notes indicate that Plaintiff's May 2015 MRI showed "[n]o definite nerve root impingement," the notes lack an explanation as to whether the May 2016 MRI showed evidence of nerve root impingement. Dr. Leong's notes state that the results of the 2015 and 2016 MRIs are "similar"; however, as noted by Plaintiff, the more recent, 2016 MRI revealed "facets abutting the right and left L4 roots in the lateral recesses and the right and left L5 roots descending into the canal," (*see* Dkt. 7 at 364), while the 2015 MRI showed no nerve root impingement (*id.* at 334). This issue was specifically raised by Plaintiff at the administrative hearing; however, due to the lack of explanation provided by the ALJ and Dr. Leong, it is not clear to the Court whether the 2016 MRI provides evidence of nerve root compression. *See Bayles v. Colvin*, No. 1:15-cv-01013(MAT), 2018 WL 822221, at *3 (W.D.N.Y. Feb. 13, 2018) ("[I]t is . . . the obligation of the ALJ to explicitly

reconcile . . . conflicting evidence by evaluating whether Plaintiff meets or medically equals the requirements of listing 1.04A.").

"Plaintiff has made at least a colorable case that he meets the requirements of Listing 1.04(A) and thus, the ambiguities noted above are critical to a finding of disability." *Monsoori v. Commissioner*, No. 1:17-cv-01161-MAT, 2019 WL 2361486, at *6 (W.D.N.Y. June 4, 2019). Accordingly, remand for further administrative proceedings is required. On remand, the ALJ must specifically explain her finding as to whether Plaintiff meets the criteria specified in Listing 1.04A. *See Nashir v. Berryhill*, No.18-CV-767-HKS, 2020 WL 1445069, at *5 (W.D.N.Y. Mar. 25, 2020) ("Plaintiff is clearly owed a more substantive explanation of why he did not meet the Listing 1.04A. If, on remand, Plaintiff is once again found not disabled at step three, the ALJ must provide an explanation of what criteria from Listing 1.04A Plaintiff failed to meet in consideration of all of the evidence regarding his severe impairments of the cervical spine. Specifically, the ALJ is directed to address all conflicting evidence and provide reasons for discounting that evidence which he rejects."). While the ALJ may reference the opinion of a medical expert in arriving at her conclusion, the ALJ should ensure that the medical expert provides an adequate explanation for her finding regarding whether Plaintiff meets the requirements of Listing 1.04A.

### B. Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for

further administrative proceedings is necessary, the Court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: March 27, 2020
      Rochester, New York